IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ROD M. NUSSBAUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:10-CV-03405-BCW |
| | ) |
| SPRINGFIELD R-XII SCHOOL | ) |
| DISTRICT, et al., | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

Before the Court is Defendants' Motion for Summary Judgment (Doc. #119). Defendants seek summary judgment on all claims asserted by Plaintiff's First Amended Complaint (Doc. #63). The Court being duly advised of the premises, for good cause shown, having carefully considered the parties' arguments, and for the reasons stated below, grants in part and denies in part Defendants' Motion for Summary Judgment.

The Court grants Defendants' Motion for Summary Judgment on Counts IV, V, and VI of Plaintiff's First Amended Complaint in favor of all Defendants. The Court grants Defendants' Motion for Summary Judgment on Counts I and II in favor of Defendant School District of Springfield, R-12 ("School District") and Defendants Pam Bodine, Kris Callen, Dr. Michael Hoeman, Andy Hosmer, Gerald Lee, Mary Norman, Dr. Tom Prater, and Jean Twitty ("Current Board Members"). The Court denies Defendants' Motion for Summary Judgment on Counts I and II as to Defendants Bruce Chrisope, Conni Ess, Dr. Mike Fancher, Jerry Harmison, Bruce Renner, Ralph Plank, and Debbie Tolliver ("Former Board Members").

- 1 -

## MOTION FOR SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment upon a showing there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A party must support an assertion of fact with depositions, answers to interrogatories, admissions on file, affidavits, and other materials of record. FED. R. CIV. P. 56(c). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (citation omitted).

The movant bears the initial responsibility of informing the Court of the basis for its motion and must identify portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, then the non-movant must respond by submitting evidentiary materials setting out specific facts showing there is a genuine issue for trial. Id. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. at 587 (citation omitted).

## UNCONTROVERTED MATERIAL
## FACTS REGARDING COUNTS I AND II

On October 2, 2000, Defendants solicited bids on behalf of the School District for a standardized voice, data, and video system. On November 21, 2000, the Former Board Members accepted Central Business Communications, Inc.'s ("Contractor") bid. On

November 27, 2000, the School District and the Contractor entered into a contract in which the Contractor agreed to supply a telephone system and computer network linking the School District's schools and locations into one telephone system and computer network. The Current Board Members were elected to the Board of Education after the School District and the Contractor entered into the contract. The Contractor subcontracted with Plaintiff to provide several services, particularly to install and service the computer network equipment. Plaintiff performed those services at multiple buildings throughout the School District. Plaintiff completed the work he agreed to perform on or before September 30, 2005. The Contractor failed to fully pay Plaintiff for his work.

## DISCUSSION REGARDING COUNTS I AND II

**A.    THE WORK PLAINTIFF PERFORMED MAY CONSTITUTE "PUBLIC WORKS" AS DEFINED BY MO. REV. STAT. § 107.170.**

A significant portion of Defendants' Motion argues the work Plaintiff performed does not constitute "public works" as defined by Mo. Rev. Stat. § 107.170.1(3) and, thus, Defendants are not subject to the requirements of Mo. Rev. Stat. § 107.170. To support this proposition, Defendant relies on an Illinois federal case analyzing a similar Illinois statute and Missouri law on permanent fixtures.

Neither the Eighth Circuit nor a Missouri court has addressed whether installing and servicing computer network equipment in a public entity (such as a school) constitutes "public works" under Mo. Rev. Stat. § 107.170. "Public works" is defined as "the erection, construction, alteration, repair or improvement of any building, road, street, public utility or other public facility owned by the public entity." MO. REV. STAT. §107.170.1(3). Mo. Rev. Stat. § 107.170 is broadly construed to carry out its purpose. See Energy Masters Corp. v. Fulson, 839 S.W.2d 665, 668 (Mo. App. 1992). The purpose of

requiring public officials to require a bond from the prime contractor on a public property project under Mo. Rev. Stat. § 107.170 is to protect subcontractors working on public works construction, similar to a mechanic's lien laws for private construction projects. Id. The public policy behind Mo. Rev. Stat. § 107.170 is to ensure subcontractors have the same protection as every person who would otherwise have a right to file and enforce a mechanic's lien if the property is private property. Id. at 669.

The Court carefully considers the parties' arguments on this issue, broadly construes Mo. Rev. Stat. § 107.170 to carry out its purpose, and finds the work Plaintiff performed may constitute "public works" as an "improvement of a building" under Mo. Rev. Stat. § 107.170. As a result, summary judgment is not warranted as to any Defendant on this ground and the case shall proceed to trial. The Court being duly advised of the premises, and for good cause shown, denies Defendants' Motion for Summary Judgment (Doc. #119) on this ground.

### B. THE FORMER BOARD MEMBERS MAY NOT BE SHIELDED FROM LIABILITY BY THE OFFICIAL IMMUNITY DOCTRINE.

Defendants argue the Former Board Members are shielded from liability by the official immunity doctrine because the November 27, 2000 contract between the School District and the Contractor required the Contractor to obtain a bond pursuant to Mo. Rev. Stat. § 107.170.

The official immunity doctrine protects public officers from tort liability for their discretionary acts but not for ministerial duties. George Weis Co. v. Dwyer, 956 S.W.2d 335, 338 (Mo. App. 1997) (citation omitted); S & W Cabinets v. Consol. Sch. Dist. No. 6, 901 S.W.2d 266, 268 (Mo. App. 1995) (citation omitted). Whether an act by an official is discretionary or ministerial is determined on a case by case basis and depends upon the

- 4 -

Case 6:10-cv-03405-BCW   Document 180   Filed 11/27/12   Page 4 of 12

degree of reason and judgment which is required.  S & W Cabinets, 901 S.W.2d at 268.  A discretionary act requires a public officer to exercise reason and discretion in determining how or whether an act should be done or a particular course should be pursued.  Id.; George Weis Co., 956 S.W.2d at 338.  A ministerial act is clerical in nature and requires a public official to perform "upon a given set of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to the official's own judgment or opinion concerning the propriety of the act to be performed." Id. (citation omitted).  Mo. Rev. Stat. § 107.170 does not prescribe rules or the means by which members of a school board are to follow, and Missouri case law provides limited guidance in delineating which duties imposed upon public officials are ministerial versus those that are discretionary.

Defendants argue Union Pacific Railroad Company v. St. Louis Marketplace, Limited Partnership, 212 F.3d 386 (8th Cir. 2000) is directly applicable on the issue of official immunity.  Similar to the mayor and comptroller in Union Pacific, Defendants argue the School District's superintendent should be liable instead of the Former Board Members.

The Court in Union Pacific held the Board of Aldermen discharged its ministerial duties by passing an ordinance incorporating the contract requirement for a bond, but the City's mayor and comptroller had ministerial duties to ensure the bond was obtained. Union Pac. R.R. Co., 212 F.3d at 390.  In its analysis, the Court acknowledged the ministerial actions an official must take to require a bond depend upon that official's role within the public entity's structure.  Id. at 391.  "Whether a function is discretionary or ministerial is a case by case determination to be made after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the

- 5 -

Case 6:10-cv-03405-BCW   Document 180   Filed 11/27/12   Page 5 of 12

exercise of professional expertise and judgment." Id. (quoting Charron v. Thompson, 939 S.W.2d 885, 886 (Mo. 1996)). "If an official is, given their role in [the public entity], empowered to take steps of a ministerial nature to ensure fulfillment of § 107.170's mandate, the failure to take such action may be the basis for personal liability." Id. The Court determined the Board of Aldermen transformed the contractual bond requirement into a legal requirement by passing the ordinance incorporating the contract; thus, the Court could not identify any further ministerial steps the Board could have taken to ensure compliance with the statute. Id.

Here, Defendants have not sufficiently shown the School District's superintendent held the executive authority to ensure the Contractor actually provided the bond required by the contract with the School District. Defendants have not demonstrated the superintendent, not the Former Board Members, was empowered to ensure the Contractor fulfilled the contractual obligation of obtaining a bond. The Court has carefully considered the parties' arguments and finds Defendants have not established they are entitled to judgment as a matter of law on this issue. As a result, summary judgment is not warranted as to the Former Board Members on this ground and the case shall proceed to trial. The Court being duly advised of the premises, and for good cause shown, denies Defendants' Motion for Summary Judgment (Doc. #119) on this ground.

### C. THE CURRENT BOARD MEMBERS DID NOT OWE PLAINTIFF A DUTY.

The Current Board Members did not have a duty to require the Contractor to obtain a bond pursuant to Mo. Rev. Stat. § 107.170 because the Current Board Members were elected to the Board of Education after the School District and the Contractor entered into the contract. The Court being duly advised of the premises, and for good cause shown,

- 6 -

grants Defendants' Motion for Summary Judgment (Doc. #119) on this ground in favor of the Current Board Members.

### D. THE SCHOOL DISTRICT CANNOT BE HELD LIABLE FOR FAILING TO REQUIRE A BOND.

Mo. Rev. Stat. § 107.170 imposes the duty of requiring a contractor to obtain a bond upon a "public entity." A "public entity" is defined as "any official, board, commission or agency of this state or any county, city, town, township, school, road district or other political subdivision of this state." MO. REV. STAT. § 107.170.1(2). The Missouri Court of Appeals held Mo. Rev. Stat. § 107.170 does not create a duty on the part of a school district. S & W Cabinets, 901 S.W.2d at 267. The statute imposes a duty on officials, board, or agents of the school district, but not on the school district itself. Id. at 268. Thus, the School District in this case cannot be held liable for failing to require a bond pursuant to Mo. Rev. Stat. § 107.170. The Court being duly advised of the premises, and for good cause shown, grants Defendants' Motion for Summary Judgment (Doc. #119) on this ground in favor of the School District.

### E. PLAINTIFF'S CLAIMS MAY NOT BE BARRED BY THE STATUTE OF LIMITATIONS.

The Court has carefully considered the parties' arguments on this issue and finds genuine issues of material fact remain in dispute. As a result, summary judgment is not warranted as to any Defendant on this ground and the case shall proceed to trial. The Court being duly advised of the premises, and for good cause shown, denies Defendants' Motion for Summary Judgment (Doc. #119) on this ground.

## UNCONTROVERTED MATERIAL FACTS
## REGARDING COUNTS IV, V, AND VI

The Contractor and Plaintiff entered into an Assignment Agreement, which was signed by Plaintiff on January 15, 2008, and the Contractor on February 12, 2008. The subject of the Assignment Agreement was twenty-eight (28) invoices payable by the School District to the Contractor. The invoices were for work performed by either the Contractor or its subcontractors for the School District's standardized voice, data, and video system.

On April 10, 1998, the Contractor obtained a loan from Cass Bank & Trust Company. The loan was secured by a Commercial Security Agreement and executed by the Contractor, which granted Cass Bank & Trust Company a security interest in all of the Contractor's accounts receivable. On April 16, 1998, Cass Bank & Trust Company perfected its security interest by filing a UCC-1 Financing Statement with the Missouri Secretary of State's Office. On February 18, 2003, an amendment to the Financing Statement was filed which added Cass Commercial Bank as a secured party.

On January 24, 2001, the Contractor obtained a loan from Cass Commercial Bank ("second loan"). The second loan was secured by a Commercial Security Agreement and executed by the Contractor, which granted Cass Commercial Bank a security interest in all of the Contractor's accounts receivable. On January 29, 2001, Cass Commercial Bank perfected its security interest by filing a UCC-1 Financing Statement with the Missouri Secretary of State's Office. On August 8, 2005, and November 24, 2010, Cass Commercial Bank filed continuation statements.

On January 7, 2007, the Contractor obtained a loan from Cass Commercial Bank ("third loan"). The third loan was secured by a Commercial Security Agreement and

executed by the Contractor, which granted Cass Commercial Bank a security interest in all of the Contractor's accounts receivable. On January 31, 2007, Cass Commercial Bank perfected its security interest by filing a UCC-1 Financing Statement with the Missouri Secretary of State's Office.

As of January 15, 2008, Cass Commercial Bank held a valid and perfected security interest in all of the Contractor's accounts receivable resulting from the three loan transactions. Thus, Cass Commercial Bank held a valid and perfected security interest in the twenty-eight (28) invoices which were the subject of the Assignment Agreement between the Contractor and Plaintiff. Prior to August 14, 2008, the Contractor defaulted on the three loan transactions.

On August 14, 2008, Cass Commercial Bank issued a Notification of Disposition of Collateral to the Contractor giving notice of Cass Commercial Bank's intent to take possession of the Contractor's assets, including the twenty-eight (28) invoices, and intent to sell the assets pursuant to the Commercial Security Agreements. On August 29, 2008, Cass Commercial Bank sold the twenty-eight (28) invoices to Gary Hursey in exchange for $50,000.00 pursuant to an Asset Purchase Agreement. On January 31, 2012, Gary Hursey executed a Release Agreement in which he released and discharged the School District from any liability for payment on the twenty-eight (28) invoices.

## DISCUSSION REGARDING COUNTS IV, V, AND VI

A.   **THE ASSIGNMENT WAS INEFFECTIVE.**

A security interest is created when a debtor executes a Security Agreement, value is given, and the debtor owns or has rights in the collateral. MO. REV. STAT. § 400.9-203(a)-(b). The security interest attaches to the collateral described in the Security Agreement.

MO. REV. STAT. § 400.9-203(b)(3)(A). A Security Agreement may create a security interest in collateral such as accounts receivable, which can be acquired or created after the date of the Security Agreement. MO. REV. STAT. § 400.9-204. Also, the attachment of a security interest to collateral gives the secured party the rights to the proceeds of the collateral. MO. REV. STAT. § 400.9-203(g). A security interest is perfected when a financing statement is filed with the Missouri Secretary of State. MO. REV. STAT. § 400.9-310(a).

In this case, the Contractor granted a security interest on the twenty-eight (28) invoices, which were the subject of the Assignment Agreement between Plaintiff and the Contractor. The security interest was created and perfected before Plaintiff and the Contractor entered into the Assignment Agreement. Furthermore, when a debtor makes an unauthorized transfer of collateral, the recipient takes the collateral subject to the security interest. Whirlpool Fin. Corp. v. Mercantile Bus. Credit, Inc., 892 F. Supp. 1256, 1264 (E.D. Mo. 1995). Thus, Cass Commercial Bank held a perfected security interest in the twenty-eight (28) invoices prior to the Assignment Agreement between Plaintiff and the Contractor. The Court being duly advised of the premises, and for good cause shown, grants Defendants' Motion for Summary Judgment (Doc. #119) on this ground in favor of all Defendants.

### B. THE SCHOOL DISTRICT WAS RELEASED FROM LIABILITY.

Even if the Assignment Agreement between Plaintiff and the Contractor was effective, the School District has been released from liability. Cass Commercial Bank sold the twenty-eight (28) invoices to Gary Hursey, and Gary Hursey executed a written release Agreement discharging the School District from any liability for payment of invoices. The

Court being duly advised of the premises, and for good cause shown, grants Defendants' Motion for Summary Judgment (Doc. #119) on this ground in favor of the School District.

### C. THE CURRENT BOARD MEMBERS WERE NOT PARTIES TO THE CONTRACT WITH THE CONTRACTOR.

Even if the Assignment Agreement between Plaintiff and the Contractor was effective, the Current Board Members cannot be held liable for the twenty-eight (28) invoices. A claim for breach of contract requires a plaintiff to prove: (1) the making and existence of a valid and enforceable contract between the parties to the contract; (2) the rights and obligations of the parties under the contract; (3) a violation of the terms of the contract; and (4) damages. Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935, 941 (Mo. App. 1996).

In this case, the Contractor and the School District entered into a contract on November 27, 2000, for the Contractor to supply the School District with a telephone system and computer network. The Contractor issued the twenty-eight (28) invoices to the School District for work performed pursuant to this contract. The Current Board Members were not parties to the November 27, 2000 contract or the invoices. The Court being duly advised of the premises, and for good cause shown, grants Defendants' Motion for Summary Judgment (Doc. #119) on this ground in favor of the Current Board Members.

### D. PLAINTIFF'S CLAIMS MAY NOT BE BARRED BY THE STATUTE OF LIMITATIONS.

The Court has carefully considered the parties' arguments on this issue and finds genuine issues of material fact remain in dispute. As a result, summary judgment is not warranted as to any Defendant on this ground and the case shall proceed to trial. The

Court being duly advised of the premises, and for good cause shown, denies Defendants' Motion for Summary Judgment (Doc. #119) on this ground.

## CONCLUSION

IT IS HEREBY ORDERED Defendants' Motion for Summary Judgment (Doc. #119) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED Defendants' Motion for Summary Judgment is GRANTED on Counts IV, V, and VI in favor of all Defendants.

IT IS FURTHER ORDERED Defendants' Motion for Summary Judgment is GRANTED on Counts I and II in favor of Defendant School District of Springfield, R-12 and Defendants Pam Bodine, Kris Callen, Dr. Michael Hoeman, Andy Hosmer, Gerald Lee, Mary Norman, Dr. Tom Prater, and Jean Twitty.

IT IS FURTHER ORDERED Defendants' Motion for Summary Judgment is DENIED on Counts I and II regarding Defendants Bruce Chrisope, Conni Ess, Dr. Mike Fancher, Jerry Harmison, Bruce Renner, Ralph Plank, and Debbie Tolliver.

IT IS SO ORDERED.

DATED: <u>November 27, 2012</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT